OPINION OF THE COURT
Benjamin Altman, J.
The question posed before the court is whether the whereabouts of the attorney’s client should be viewed as falling within the protective cloak of the attorney-client privilege. In this case an agreement had been made during plea bargaining that the defendant would enter a State psychiatric hospital and that after an appropriate period of time the defendant would be released and would return for sentencing. The defendant violated the terms of the agreement by leaving the hospital without permission. She subsequently contacted the attorney who had represented her in the plea bargaining.
In 1977 defendant was indicted and charged with the crime *389 of murder in the second degree in the slaying of her grandmother. She pleaded guilty to the crime of manslaughter in the second degree. During plea negotiations an agreement was entered into as follows: The defendant would plead guilty to manslaughter in the second degree and her sentence would be deferred until after release from the hospital. It was agreed that the defendant would not leave the hospital without approval.
The defendant, in contravention of the terms of the agreement, left the hospital without permission of the medical authorities or the court. Consequently, on September 11, 1978, Judge Rothwax, in the presence of the defendant’s attorney, issued a bench warrant for the defendant’s arrest.
Defendant’s attorney recently became aware of the defendant’s whereabouts and without divulging her location notified the court that he had information relating to her whereabouts. He stated to the court that he was concerned that the defendant was a danger to herself. On August 3, 1979, the attorney appeared before the Grand Jury and after some preliminary questions he was asked, "Do you have any information concerning the current whereabouts of Jane Doe?”
The attorney declined to answer the question posed by the Grand Jury without a directive from the court, on the ground that the whereabouts of the client was a privileged communication.
The attorney-client privilege is not one which is guaranteed by the Constitution. It is a statutory provision subject to the will and control of the Legislature.
The common-law attorney-client privilege has been codified in CPLR 4503 which provides that: "Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication”.
The question facing this court is whether this statutory privilege applies to the facts herein disclosed.
The attorney-client privilege can be traced to the reign of Elizabeth (Radin, Privilege of Confidential Communication Between Lawyer and Client, 16 Cal Law Rev 487). Originally *390 its basis was the honor of the attorney rather than the apprehension of the client. Today the concept upon which the privilege rests is the desire to promote freedom of consultation between attorney and client by insuring the latter against disclosure (Fisch, New York, Evidence, § 516).
Those cases which have upheld the attorney-client privilege in criminal cases stress the need for the defendant to have the freedom to divulge all of the facts of the case in order to enable his attorney to prepare a complete defense. Perhaps the most noted New York case upholding the attorney-client privilege is People v Belge (83 Misc 2d 186, affd 50 AD2d 1088, affd 41 NY2d 60).
During the course of preparing his client’s case, defendant, assigned counsel for a man accused of murder, was told of three other murders his client had committed. He investigated and discovered a body, but failed to report it to the authorities and was later indicted for violations of the Public Health Law requiring that a decent burial be accorded the dead, and that anyone knowing of the death of a person without medical attendance report it. The court in acknowledging the attorney’s right to withhold the information stated: "The effectiveness of counsel is only as great as the confidentiality of its client-attorney relationship. If the lawyer cannot get all the facts about the case, he can only give his client half of a defense. This, of necessity, involves the client telling his attorney everything remotely connected with the crime.” (People v Beige, 83 Misc 2d 186, 189, supra.)
In the landmark case of United States v Nixon (418 US 683, 713), the court stated: "[T]he constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of a particular case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated.”
The theory upholding the attorney-client privilege in the two afore-mentioned cases is not applicable here.
The situation in the present case is clearly distinguished from Beige and Nixon. There has been no allegation that the attorney was asked to divulge any information received from the client regarding the indictment for murder; therefore, we are not talking about a less effective defense for the client due to violation of the attorney-client privilege. Nor are we here discussing a crime which had been committed in the past. We *391 have instead an ongoing crime being continuously perpetrated by Jane Doe.
In essence, the present situation is analogous to one where a client jumps bail and then informs his attorney of his whereabouts.
The American Bar Association Committee on Professional Ethics, when faced with a situation in which a defendant jumped bail and subsequently informed his attorney of his whereabouts, in its opinion stated: "under such circumstances the attorney’s knowledge of his client’s whereabouts is not privileged, and that he may be disciplined for failing to disclose that information to the proper authorities” (Formal Opn 155 [1936]; 22 Amer Bar Assn J 502). A pre-existing, specifically directed legal requirement that this defendant show up for trial permitted the attorney to disclose information required for its fulfillment. In a subsequent opinion (Formal Opn 156 [1936]; 22 Amer Bar Assn J 502, 503), the committee extended this concept to situations in which an agreement can be implied by the client to abide by the terms of a contemplated court order or legal requirement. The committee stated: "When an attorney representing a defendant in a criminal case applies on his behalf for probation or suspension of sentence, he represents to the court, by implication at least, that his client will abide by the terms and conditions of the court’s order. When that attorney is later advised of a violation of that order, it is his duty to advise his client of the consequences of his act, and endeavor to prevent a continuance of the wrongdoing. If his client thereafter persists in violating the terms and conditions of his probation, it is the duty of the attorney as an officer of the court to advise the proper authorities concerning his client’s conduct. Such information, even though coming to the attorney from the client in the course of his professional relations with respect to other matters in which he represents the defendant, is not privileged from disclosure.”
In the determination whether a communication by a client to an attorney should be afforded the cloak of privilege, "much ought to depend on the circumstances of each case” (Matter of Kaplan [Blumenfeld], 8 NY2d 214, quoting 8 Wigmore, Evidence [5th ed], § 2313, p 609). The circumstances before the court warrant disclosure of the client’s location. As part of the plea bargaining agreement the defendant consented to undergo psychiatric care. After treatment defendant was to *392 return to court for sentencing. The agreement was reached through the efforts of the defendant’s attorney, the prosecutor, and the court. The defendant violated her part of the agreement by leaving the hospital without permission and with intent to frustrate the court mandate. Where the confidence is received by an attorney in order to advance a criminal or fraudulent purpose, or when he aids and advises in the perpetration of an unlawful act, it is beyond the scope of the privilege (People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, affd 242 App Div 611; Tierney v Flower, 32 AD2d 392; Uniform Rules of Evidence, rule 26, subd [2], par [a]).
Accordingly, the court directs the attorney to answer the question posed by the Grand Jury concerning his client’s whereabouts.