OPINION OF THE COURT
Stuart Namm, J.
A duly impaneled Grand Jury of the County of Suffolk seeks to compel an attorney to answer questions as to the whereabouts of an alleged fugitive from justice and his sister, the former having retained the services of such attorney to move for a dismissal of an indictment charging him with the crimes of manslaughter in the second degree and operating a motor vehicle while under the influence of alcohol on the grounds that both his constitutional and statutory rights to a speedy trial have been violated.
The aforesaid defendant was indicted on November 26, 1975 of such charges, and was arraigned thereunder on December 3, 1975. After numerous adjournments — most at the request of the defendant — the case was marked “ready for trial” in the County Court of Suffolk County, and a pretrial hearing was scheduled for November 23, 1976, on which date the defendant failed to appear, and a bench warrant was issued for his arrest.
Although numerous efforts were made by the Suffolk County Police Department and the office of the District Attorney to ascertain the whereabouts of this defendant, and to enlist the assistance of other law enforcement ágencies in this effort, to date, such bench warrant remains *198 outstanding, and the defendant has failed to appear for trial since November 23, 1976. His whereabouts remain unknown to law enforcement officials in the County of Suffolk.
On or about December 11, 1981, more than five years after his disappearance the defendant moved for dismissal as hereinbefore mentioned. The People strongly opposed such application, and on February 19, 1982, an Acting County Court Judge of this court denied such application stating, inter alia: “For over five years the defendant has deliberately avoided the orders and processes of this court. He should not be permitted to apply to a court which, because of the defendant’s actions, may not be able to implement its own decision.”
Subsequently, a CPLR article 78 proceeding was brought by the defendant to compel the lower court to grant the requested relief, and such petition was dismissed on July 15, 1982.
On September 23, 1982 the aforesaid Grand Jury commenced an inquiry as to the whereabouts of the said defendant, and to consider evidence as to a possible charge of bail jumping. His attorney was called to testify as a witness, and refused to answer any questions regarding the present whereabouts of the defendant or of his sister, claiming attorney-client privilege as lawful reason for his refusal to respond to such questions.
The Grand Jury now seeks this court to compel such attorney to answer any questions concerning the whereabouts and/or address of the said defendant and his sister.
The attorney claims to be a member of the New York Bar for 55 years, and professes to be “keenly aware * * * of my professional responsibility as an officer of the Court.” He has retained the services of separate counsel to champion his cause, and it is argued, on his behalf, that his responsibility to his client in this regard outweighs his responsibility as an officer of the court to assist the Grand Jury in its investigation. In support of his position, he cites the recent attention given to this controversial ethical question by the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York in its Opinion No. 81-13 (NYLJ, Dec. 31, 1981, p 2, col 4).
*199 In such opinion, the committee took issue with the longstanding ethical opinions of the American Bar Association, and opined, in response to an attorney who asked whether he was obliged to disclose his client’s whereabouts; whether he has an obligation to advise his client to surrender; and whether he may continue to represent the client if the client refuses to surrender: “assuming the client’s flight is a crime, the attorney may, but need not, disclose his client’s whereabouts * * * The attorney’s knowledge of his client’s whereabouts is a secret learned only because of an existing attorney-client relationship.” (Emphasis added.)
The committee concludes, citing appropriate sections of the Code of Professional Responsibility, that if the client has disclosed to the attorney the commission of a crime that is continuing, under the code, “the attorney is ‘permitted’ to disclose information regarding his client’s whereabouts, but he is not required to do so.” (Cf. NY County Bar Assn 405 [1975]; ABA Opn No. 23 [1930], 16 Amer Bar Assn J 336.)
While it would appear that the attorney herein has impaled himself upon an ethical paradox, and has concluded, as has the committee, that he is the final arbiter of whether or not to respond to the inquiry of the Grand Jury, the courts have not been so troubled by such lofty ethical questions, and have dealt with this question, as courts are wont to do, on a more pragmatic level, with an eye toward the public interest.
The courts of this State have long recognized that the attorney-client privilege constitutes an obstacle to the truth-finding process, and that the invocation of same should be cautiously observed to ensure that its application is consistent with its purpose. (Matter of Jacqueline F., 47 NY2d 215; Matter of Priest v Hennessy, 51 NY2d 62.) In the latter case, the Court of Appeals has established four general principles to be considered before a claim of privilege can be made. They are as follows (pp 68-69):
1. An attorney-client relationship must have been established, that is, the attorney must have been contacted in his capacity as such for the purpose of obtaining legal advice or services:
*200 2. It must be shown that the information sought to be protected from disclosure was a confidential communication made to the attorney for the purpose of obtaining legal advice or services;
3. The burden of proving each element of the privilege rests upon the party asserting it; and
4. Even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure.
In the instant case, it can logically be presumed that this attorney was contacted for the purpose of obtaining his legal advice or services, he having filed the aforesaid motion to dismiss the 1975 indictment on behalf of the accused. It may even be presumed that if the attorney is, in fact, aware of the whereabouts of the defendant and his sister, that such information was imparted to him by way of a confidential communication, inasmuch as the accused remains a fugitive from justice, and his sister, who has written various communications to this court on his behalf, may even be deemed an accomplice. However, such questions are for the Grand Jury to decide.
Even if this court were to presume that the attorney has met his burden in this regard, nevertheless, the privilege must yield to the existence of a strong public policy to the contrary.
A Grand Jury has traditionally been accorded wide latitude to inquire into violations of the criminal law and the duty of every citizen to testify has long been recognized. (United States v Calandra, 414 US 338, 345.) Furthermore, a Grand Jury may inquire as to the whereabouts of unlocated persons. (Hoffman v United States, 341 US 479.) The function of a Grand Jury is to hear and examine evidence concerning offenses and concerning misconduct, nonfeasance and neglect in public office, whether criminal or otherwise, and to take action with respect to such evidence. (GPL 190.05.) Accordingly, there is no question but this Grand Jury has been vested with the lawful authority to inquire as to the whereabouts of a fugitive from justice, or of his sister who may be privy to such information.
*201 It is also equally well settled that the subpoena power of a Grand Jury is not unlimited, and that a Grand Jury “ ‘may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law.’ ” (Matter of Grand Jury Subpoenas [Field], 408 F Supp 1169, 1172; cf. United States v Calandra, supra, at p 346.)
The question therefore remains whether, in the facts of this case, the well-established attorney-client privilege must yield to a strong public policy. That very issue was considered by the United States District Court, Southern District, New York, in the Field case (supra) and there the court concluded that where a client’s address was being sought, the same, under the facts of the case, fell within the scope of the privilege. However, that court was quick to point out that it was not holding “that a client’s address is information which always falls within the privilege.” On the contrary, it was held that “As with a client’s identity, it may be only in rare instances that this information will be protected.” (Matter of Grand Jury Subpoenas [Field], supra, at p 1173.) Furthermore, there was no allegation that the advice rendered by counsel to his client in that case was given for the purpose of aiding him in the commission of any crime.
While no one herein has accused counsel of aiding his client in the commission of a crime, the crime of bail jumping, by its very nature, is a continuing crime, and continues until after the fugitive has been apprehended, or adequate legal excuse has been provided for his absence. Therefore, it can be said that counsel has cloaked himself with the attorney-client shield under circumstances where both the law and ethics dictate that such shield not be invoked, and that the attorney divulge such information to the proper authorities, namely, the Grand Jury of Suffolk County. (Formal Opn No. 156 [1936], 22 Amer Bar Assn J 502, 503.)
An analogous situation was considered in Matter of Doe (101 Misc 2d 388) and the court concluded that (p 392): “Where the confidence is received by an attorney in order to advance a criminal or fraudulent purpose, or when he aids and advises in the perpetration of an unlawful act, it is beyond the scope of the privilege”.
*202 Here, as there, the invocation of the attorney-client privilege thwarts the lawful purpose of the Grand Jury, and for this court to permit same would be to encourage activity which would aid and abet the advancement of an unlawful act. While counsel’s consideration of the interests of his client are much to be admired in the abstract the same must give way to the public interest in the investigation of a continuing crime.
As to the defendant’s assertion that the proper forum to determine whether he has a professional responsibility to disclose the whereabouts of his client is the Bar Association, it must be re-emphasized that there is a deep public interest in the function of a Grand Jury to examine evidence of possible crimes. Such public interest must supersede the authority of any local Bar Association to render ethical opinions to its members, or to discipline an attorney for a breach of ethics.
Accordingly, for all of the foregoing reasons, the attorney is hereby directed to respond to all questions put to him by the Grand Jury on the subject of the past or present whereabouts of the defendant and his sister.