SYRACUSE SUPPLY COMPANY ET AL. *v.*
U.S. LUMBER COMPANY ET AL.

SUPERIOR COURT  JUDICIAL DISTRICT OF  FILE No. 232049
NEW HAVEN

Memorandum filed November 20, 1984

*Tyler, Cooper & Alcorn,* for the plaintiffs.
No appearance for the defendants.

FRACASSE, J. Pursuant to General Statutes § 52-155, and Practice Book § 245, the plaintiffs move to compel the testimony of Attorney Howard E. Kantrovitz, legal counsel of the defendant U.S. Lumber Company, a New York general partnership.

The plaintiffs seek to compel Attorney Kantrovitz to answer the following four questions and questions to be propounded under paragraph 5: "(1) During the course of his representation of U.S. Lumber, did Attorney Kantrovitz conduct a search of the Uniform Commercial Code files in the New York Secretary of State's Office? (2) If the answer to question number 1 is no, did Attorney Kantrovitz cause such a search to be conducted? (3) In the course of said representation, did Attorney Kantrovitz review the results of a Uniform Commercial Code filing search of the New York Secretary of State's Office? (4) Did that Uniform Commercial Code search reveal any financing statements naming Syracuse Supply Company or Syracuse Supply Leasing Company, Inc. as a secured party with respect to assets of either the Pine Plains Lumber Company or the Pine Plains Kiln Company? (5) If the answer to question number 4 is yes, the plaintiffs request the right to present copies of any and all such financing statements to Attorney Kantrovitz to determine which particular statements he saw."

Attorney Kantrovitz refuses to answer the questions on the ground that his client claims the attorney-client privilege, and states: "[I]f I am directed to do things by my client or I do things on behalf of my client because I think they are appropriate and necessary for me to do

in order for me to represent my client appropriately, those are matters that are between myself and my client and they are privileged.''

In his brief in opposition to the motion, Attorney Kantrovitz states: "Howard E. Kantrovitz, Esquire, represented U.S. Lumber Company, a New York general partnership, in a proceeding to purchase the secured position of Bankers Trust Company of Albany which held a blanket security interest in all of the assets of the Pine Plains Lumber Corporation and Pine Plains Kiln Corporation, both of which are located in New York. The Pine Plains Corporations were the subjects of a petition for relief under the Federal Bankruptcy Code. The bankruptcy matter was before the United States Bankruptcy Court for the Northern District of New York (Case No. 81-12362). During the course of the representation, the client discussed with Attorney Kantrovitz the conduct of a search of the UCC records against the assets of the Pine Plains Corporations. Any searches which may have been conducted were done pursuant to communications between Kantrovitz and U.S. Lumber and based on instructions from U.S. Lumber. All inquiries were part of Kantrovitz's representation of U.S. Lumber.

"Subsequent to U.S. Lumber's purchase of the security interest of the Bank, U.S. Lumber moved for a modification of the automatic stay in order to foreclose on the secured position it purchased. The motion for a modification was granted and U.S. Lumber took possession of the assets of the Pine Plains Corporations to the extent that those assets were subject to the security interest. Following U.S. Lumber's taking of possession of the assets of the Pine Plains Corporations, Syracuse Supply Company and Syracuse Supply Leasing Company, Inc., brought suit against U.S. Lumber and certain individuals claiming that Syracuse had a superior security interest in certain assets of the Pine

Plains Corporations. U.S. Lumber is resisting Syracuse's claims on the ground that Syracuse did not properly perfect their security interest."

"Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." *Hurley* v. *Connecticut Co.,* 118 Conn. 276, 284, 172 A. 86 (1934); 8 Wigmore, Evidence (McNaughton Rev.) § 2292, p. 554. In substance, an attorney is bound to remain silent as to "that information born of confidential communication." *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750 (1971); the privilege exists "only to secure the client's subjective freedom of consultation" and it "extends to communications made through agents for communication"; *State* v. *Hanna,* 150 Conn. 457, 465–66, 191 A.2d 124 (1963); communications through agents, however, "are privileged to no greater extent than they would have been had they been made directly between the principals." *State* v. *Hanna,* supra, 465–66. The burden of proving "facts essential to the privilege is on the person asserting it." *State* v. *Hanna,* supra, 466. The law of the state of New York, in this regard, is no different from the law of Connecticut. *Bloodgood* v. *Lynch,* 293 N.Y. 308, 314, 56 N.E.2d 718 (1944); *Matter of Grand Jury,* 117 Misc. 2d 197, 200, 456 N.Y.S.2d 312 (1982); 7B N.Y. Civ. Prac. Law (McKinney 1963) § 4503.

In this case, the client has failed to prove facts essential to the privilege. Information obtained by Attorney Kantrovitz, or by an agent hired by him, from the Uniform Commercial Code files in the New York secretary of state's office is not a communication from the client to his attorney.

Accordingly, the motion is granted.