470 A.2d 611
**COMMONWEALTH of Pennsylvania**

v.

**Holly MAGUIGAN, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 4, 1983.

Filed Dec. 30, 1983.

Petition for Allowance of Appeal Granted March 30, 1984.

318

David Rudovsky, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH,* CAVANAUGH and MONTEMURO, JJ.

SPAETH, Judge:

This is an appeal from a judgment of civil contempt. Appellant is an attorney. She was before the trial court representing one Carlos Aquino, who was scheduled to stand trial on a charge of rape. On the Commonwealth's petition, the trial court granted appellant immunity from the use against her of her testimony disclosing "any information she may have regarding the whereabouts of the ... Defendant, Carlos Aquino, and any information she may have on how to locate the Defendant Aquino." N.T. 6/27/83 at 19. When the court ordered appellant to provide this information, appellant declined to do so on the grounds that the court lacked jurisdiction to compel her testimony; that the grant of immunity did not effectively protect her rights under the Fifth Amendment; and that the information she had been ordered to disclose was protected by the attorney-client privilege. N.T. 6/27/83 at 23–24. The court then found appellant guilty of civil contempt and ordered her to pay a fine of $100 a day until she complied with the

* Argument in this case was conducted prior to Judge Spaeth's investiture as President Judge of the Superior Court.

court's order. On appeal, appellant renews her arguments on jurisdiction and the attorney-client privilege. She also argues that she was entitled to a hearing on her claim, made incident to her request to the trial court for a stay, that she was being selectively prosecuted. We hold that the information appellant was ordered to disclose was protected by the attorney-client privilege. The order of the trial court is therefore reversed. We find it unnecessary to decide the issues raised by appellant's arguments on jurisdiction and selective prosecution.

Appellant's client, Carlos Aquino, was scheduled to stand trial on April 7, 1983, on a charge of rape. When Aquino did not appear for trial, the Commonwealth moved the trial court to compel appellant to "disclose the address and telephone number of the Defendant." N.T. 4/7/83 at 2.

The Commonwealth offered no testimony in support of its motion. However, the assistant district attorney did make various statements to the trial court, as follows.

According to the assistant district attorney: Aquino last appeared before the trial court on January 19, 1983, when he was admitted to bail, and gave his address as 2941 Kensington Avenue, Philadelphia. N.T. 4/7/83 at 4. On February 9 a federal warrant was issued for his arrest. *Id.* at 5. The federal authorities went to the Kensington Avenue address and spoke with "a man by the name of Girardo Tempkin, who said the man [Aquino] had not stayed there since Christmas. and he had been in court since [*sic*] on January 19, 1983 with his attorney." *Id.* at 6.

The assistant district attorney continued:

Ms. Maguigan [appellant] had been in contact with Girardo Tempkin, had spoken with him and she said she did not know where he was and was trying to locate him through Girardo Tempkin at this address, through the Kensington Avenue address. We don't know and purportedly Ms. Maguigan does not know either.

*N.T.* 4/7/83 at 6.

This statement is not clear to us. Our interpretation of it is that when the federal authorities spoke to Tempkin, he told them that appellant had told him that she did not know where Aquino was and was looking for him.

The assistant district attorney went on to say: On February 19 and 22, 1983, "telephone records [*sic*] [were] intercepted" from Aquino's brother's residence in Milwaukee "to an address in Gladwynne." *Id.* at 6. Aquino had been extradited from Milwaukee on the charge of rape. *Id.* On February 23 a call was made from a telephone booth in Milwaukee to appellant's office. The call was charged to Aquino's brother's home telephone number, and was a seven-minute call. *Id.* at 7. On March 15 "Emigration [*sic*] officials" went to the Gladwynne address and were told that Aquino had never lived there, but on March 28 they returned and found that in fact he had been living there but had left three weeks ago. *Id.*

Finally, the assistant district attorney said:

The problem here is that [appellant] two weeks ago told me outside the courtroom in City Hall that despite the fact that I had several conversations with her regarding [Aquino's] whereabouts being completely unknown, that she was ready to try the [rape] case and [Aquino] would be present and when I asked, Where is he; do you know, she said, I can't tell you that.

*Id.* at 7–8.

This statement was contradicted by appellant. After hearing argument by respective counsel, the trial court asked appellant, "Are you ready to go to trial?", to which she replied:

No sir. And one thing I would like to make clear is that I did not two weeks ago tell Ms. McDonough [the assistant district attorney] that I would produce my client today and that I knew where he was. She asked me if I could tell her where he was and I told her that I would not and she said, Let me ask you this, are you ready for trial? I said that as far as I am concerned I was ready since January. We were both in [Room] 625 and we got the

first date the Court would give us. That was the extent of my representations to her. She has not called me to say, Do you object to having my witnesses on call? *Id.* at 21–22.

The contradiction between the assistant district attorney's and appellant's statements remains unresolved, for the trial court has made no findings of fact—we assume because no testimony was presented to it. Instead, immediately after appellant's statement, the court indicated that it wished further argument, and a schedule for the submission of briefs was set. *Id.* at 22–23.

The further argument thus requested by the trial court was heard on April 13, 1983. During the proceeding on April 7, which we have just described in some detail, it was evident that the information sought from appellant was limited to her client Aquino's address and telephone number. Thus at one point the trial court said to appellant's counsel:

I assume we are proceeding under the assumption that [appellant] knows the Defendant's [Aquino's] address. I'm not expecting you to answer, but because if she didn't know it, this whole thing was a futile exercise. So we'll go ahead on that basis.

N.T. 4/7/83 at 16.

Shortly thereafter, the assistant district attorney said:

The question is the Defendant's address....

*Id.* at 17.

And:

We are not asking [appellant] to tell us how to find [defendant] or anything. We have a right to know. This court has a right to know where he is, if she knows, and that's all. We are not asking what communications he has had with her, anything he said with regard to where he has been hiding.... We are merely asking is there an address, if she knows his address and the Court deserves to know that.

*Id.* at 19–20.

At the further argument on April 13, however, the scope of the inquiry broadened, the trial court asking "whether [appellant] knows the whereabouts of the Defendant." N.T. 4/13/83 at 2. Counsel for appellant responded that this question was "materially different than the question that was posed at the hearing [on April 7], does she know the address and phone number of the Defendant." *Id.* When the court said, "Essentially, that's what I want to know," *id.*, counsel replied, "She does not know the address and phone number of the Defendant," *id.* at 2. After further colloquy, counsel said:

> ... I can represent to the Court that during the course of what we consider to be an attorney-client conversation, as a result of that conversation, [appellant] has some general information about the possible whereabouts of the Defendant, and I put it that way because there is a difference between that and the address issue.

*Id.* at 3.

The court found this representation unsatisfactory, and, stating that "there is nothing in the client-counsel, attorney relationship that makes that information free from discovery," *id.* at 4–5, found appellant in contempt and fined her $100 a day until she disclosed the information, *id.* at 6.

Upon appellant's petition for a stay pending appeal, this court, by order dated April 26, 1983, stayed the order of contempt. On the Commonwealth's application for remand so that it could present a petition asking the trial court to grant appellant immunity, this court, by order dated May 13, 1983, vacated the order of contempt and remanded the matter to the trial court.

On June 27, 1983, the Commonwealth's petition asking that appellant be granted immunity came before the trial court. The petition alleged, *inter alia,* that "the Commonwealth believes that [appellant] has some information regarding [Aquino's] whereabouts and wishes to question [appellant] in that regard," Petition, para. 1, and that "information regarding [Aquino's] whereabouts" was necessary "so that his continuing crime as a fugitive may be

terminated," and he "can be brought to trial for rape", *id.*, para. 2(a), (b). With its petition the Commonwealth submitted a form of order providing in part that appellant be ordered to

> disclose to this Court and the District Attorney's Office any information she may have regarding the whereabouts of the ... Defendant, Carlos Aquino, and any information she may have on how to locate the defendant Aquino.

Again, no testimony was offered by the Commonwealth, only argument being heard. At the conclusion of argument, the trial court entered its order in the form submitted by the Commonwealth. N.T. 6/27/83 at 19–20. The court then directed appellant to testify forthwith in accordance with its order. *Id.* at 23. Appellant declined on the grounds that the court lacked jurisdiction to compel her testimony; that the grant of immunity did not effectively protect her rights under the Fifth Amendment; and that the information she had been ordered to disclose was protected by the attorney-client privilege. *Id.* at 23–24. The court thereupon found appellant guilty of civil contempt and ordered her to pay a fine of $100 a day until she complied with the court's order. On appellant's application, we granted a stay pending disposition of this appeal, which we ordered expedited.

1

■ Appellant argues that since no proceeding was pending before the trial court, the court had no jurisdiction to compel her testimony.

We agree with appellant that a court has no power to compel testimony where no proceeding is pending before the court. "The essence of a subpoena's function is to aid the court in the resolution of litigation, so that if there is no formal proceeding pending before the court there can be no legitimate reason to issue a subpoena." *Commonwealth v. Polak*, 438 Pa. 67, 69, 263 A.2d 354, 356 (1970). From this it follows that a court has no power to compel testimony by granting immunity, absent a pending proceeding. *See also*

*Commonwealth v. DeJohn*, 486 Pa. 32, 41 n. 5, 403 A.2d 1283, 287 n. 5 (1979).

The question here, however, is whether there *was* a proceeding pending before the trial court when appellant was granted immunity and ordered to testify. In appellant's view, there was not: Aquino's trial on the charge of rape was not "pending" but instead, never got started; and while criminal charges may someday be brought against Aquino because of his failure to appear for trial, so far as appears no such charges have been brought yet, and therefore neither can they be described as "pending." However, while no charges have been brought against Aquino for his failure to appear for trial, charges *have* been brought against him for rape. Perhaps it may not be said that the *trial* on those charges was "pending" before the court. But what about the charges themselves?

The issue has been obscured, however, by what seem to be inconsistent positions taken by the Commonwealth. On the one hand, the Commonwealth distinguishes *Polak* and *DeJohn* on the ground that "these cases involved only ongoing *investigations* whereas the instant case involves a *pending prosecution* within the court's jurisdiction." Brief for Commonwealth at 12 n. 11. (Commonwealth's emphasis.) This seems to argue that the trial court had jurisdiction because of the fact that appellant's client, Aquino, had been charged with rape and directed to appear for trial. And consistent with this argument, the Commonwealth alleged in its petition that appellant be granted immunity that "[t]his information [*i.e.,* 'information regarding [Aquino's] whereabouts'] is ... essential so that defendant can be brought to trial for rape." Petition, para. 2(b). On the other hand, the Commonwealth also alleged in its petition, as the first reason why appellant should be granted immunity, that "[i]t is necessary for the Commonwealth to obtain information regarding [Aquino's] whereabouts so that his continuing crime as a fugitive may be terminated." *Id.* paragraph 2(a). This seems to argue that because Aquino was committing a crime, the trial court had jurisdiction to

compel appellant's testimony so that the Commonwealth could investigate and apprehend him for that crime.

The trial court itself was of the view that its jurisdiction derived from the Immunity Act. Slip op. at 20–21. Section (a) of the Act provides:

(a) General rule.—Immunity orders shall be available under this section in all proceedings before:

(1) Courts

(2) Grand juries

(3) Investigating grand juries

(4) The minor judiciary or coroners.

42 Pa.C.S.A. § 5947(a).

The trial court held that the rape charges against Aquino were "proceedings before [the court]." *Id.* at 21. The court did not discuss the Commonwealth's apparent invocation of its jurisdiction to enable an investigation of Aquino for his continuing crime as a fugitive.

It seems clear that if the claim were that appellant had information relevant to whether Aquino had committed the rape, the trial court would have had jurisdiction to grant her immunity so that the Commonwealth might call her as a witness against Aquino. But it is not so clear that the Immunity Act was intended to extend to a situation where the information sought is *ir*-relevant to whether the rape was committed.

In saying this, we recognize that evidence that Aquino had not appeared for trial might be relevant as tending to prove consciousness of guilt and hence guilt itself. *See generally* McCormick on Evidence 655 (2d ed. 1972). But appellant's testimony was not sought to prove that Aquino *had* fled, but to prove *where* he had fled. In its brief, the Commonwealth leaves no doubt on this point, stating that "[a]ppellant has not been asked why her client fled, but where he may be found." Brief for Commonwealth at 6–7 n. 8. It does not appear how such evidence could be relevant at trial. Indeed, when at oral argument counsel for appellant asserted that the Commonwealth would try to

use appellant's testimony against her client at trial, counsel for the Commonwealth denied the assertion, saying that the testimony was sought only so that Aquino could be brought to trial; and in its Supplemental Brief, at 2, the Commonwealth states that the trial court ordered áppellant to testify so that the court could "proceed with the pending prosecution." It may be that the Immunity Act by its reference to immunity orders "in all proceedings before" a court permits an attempt to secure testimony that is irrelevant to proof in a given proceeding of the defendant's guilt, but we have not been cited to, nor are we aware of, any precedent supporting such an extension of the Act. So far as we know, the use made of the Immunity Act in this case is unprecedented.

Thus we find ourselves unpersuaded by the reasoning either of appellant, the Commonwealth, or the trial court. If we *had* to decide the issue of the trial court's jurisdiction, then of course we would. But, for reasons that will appear, we have concluded that in any event the information sought from appellant was protected by the attorney-client privilege. In these circumstances we believe the better way for us to proceed is to refrain from deciding an issue both difficult and novel, and so far as we can tell, unlikely to arise again. Instead, we shall simply assume that the trial court did have jurisdiction, and decide the appeal on its merits.

2

(a)

"The notion that the loyalty owed by the lawyer to his client disables him from being a witness in his client's case is deep-rooted in Roman law," McCormick, *supra* at 175 (footnote omitted), and the attorney-client privilege, "of which we find the first trace in Elizabeth's time," *id.,* is the oldest of the privileges protecting confidential communications. 8 Wigmore, Evidence §§ 2292 at 542 (McNaughton rev. 1961). *See also Cohen v. Jenkintown Cab Company,* 238 Pa.Super. 456, 357 A.2d 689 (1976). Wigmore states the privilege as follows:

> Where legal advice of any kind is ... sought from a professional legal adviser in his capacity as such, ... the communications relating to that purpose, ... made in confidence ... by the client, ... are at his instance permanently protected ... from disclosure by himself or by the legal adviser, ... except the protection be waived.

Wigmore, *supra* at 554.

The original theory by which the privilege was explained was that on his oath and honor, the attorney's "first duty ... [was] to keep the secrets of his clients." Wigmore § 2290 at 543 (citation omitted). In the early 1700's, however, a "new theory began to appear [which] looked to the necessity of *providing subjectively for the client's freedom of apprehension* in consulting his legal adviser." *Id.* (emphasis in original). The older theory "struggled along for some time by the side of the newer one, like two powerful streams debauching into the same channel." *Id.* at 543–544. But since the late 1700's the privilege has been grounded on the necessity of promoting freedom of communication between attorney and client by allaying the client's fear that the attorney will be compelled to disclose a confidence. *Id.* at 545. This court has repeatedly explained the privilege in these terms. *Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 434 A.2d 740 (1981) (purpose of privilege to foster full communication between attorney and client); *Brennan v. Brennan*, 281 Pa.Super. 362, 422 A.2d 510 (1980) ("[T]he privilege is not concerned with prejudice, the ascertainment of truth, or the reliability of attorney-client communications, but only to foster a confidence between an advocate and his client that will lead to a trusting and open dialogue.") (citation omitted); *Cohen v. Jenkintown Cab Company, supra* (purpose of privilege to enable client to place unrestricted and unbounded confidence in attorney). *See also Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1980).

As is true of other aspects of the law, such as the right to be free of unreasonable searches and seizures, or the privilege against self-incrimination, the attorney-client privilege

is sometimes characterized as protecting someone who has violated the law. But this reveals a fundamental misconception. The privilege is to protect, not the guilty, but the administration of justice. "[T]he theory [is] that claims and disputes which lead to litigation can most justly and expeditiously be handled by practiced experts, namely lawyers, and that such experts can act effectively only if they are fully advised of the facts by the parties whom they represent.... The proposition is that the detriment to justice from a power to shut off inquiry to pertinent facts in court, will be outweighed by the benefits to justice (not to the client) from a franker disclosure in the lawyer's office." McCormick, *supra* at 175. Thus, our Supreme Court has stated that "the damage to the administration of justice occurs when the sanctity of the confidence is improvidently violated, not when the evidence is given substantive consideration." *Estate of Kofsky, supra,* 487 Pa. at 482, 409 A.2d at 1362.

In Pennsylvania the attorney-client privilege has as to criminal cases been codified in 42 Pa.C.S.A. § 5916.[1] It provides:

In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same unless in either case this privilege is waived upon the trial by the client

Similarly, Canon 4 of the Code of Professional Responsibility[2] provides that "[a] Lawyer Should Preserve the Confidences and Secrets of a Client," and the Code's Disciplinary

1. As to civil cases the privilege has been codified, in identical terms, in 42 Pa.C.S.A. § 5928.

2. Adopted by the Supreme Court of Pennsylvania on February 27, 1974, effective February 27, 1974. We note that the American Bar Association's Model Rules of Professional Conduct were adopted by the ABA House of Delegates on August 2, 1983. *See* 52 U.S. Law Week 1–27, August 16, 1983. The Model Rules have not been adopted, at least not yet, by the Pennsylvania Supreme Court. Even so, we find nothing in the Model Rules that would affect our holding in the present case.

Rule 4–101, entitled "Preservation of Confidences and Secrets of a Client," includes the following provisions:

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client, including his identity.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the client ..., but only after a full disclosure....

(2) Confidences or secrets when permitted under Disciplinary Rules or required by court.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

Ethical Consideration 4–4 points out that Canon 4 and the common law privilege are not identical:

The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge.

Even so, "in any analysis of the attorney-client privilege, we must recognize that our Code of Professional Responsibility provides strong support for the concept of a legally protected confidentiality for client attorney discourse." *Brennan v. Brennan, supra* 281 Pa.Super. at 370, 422 A.2d at 514.

(b)

In applying these general considerations to this case, it is essential to note exactly what the Commonwealth seeks from appellant, and what the trial court ordered her to disclose. The Commonwealth has characterized the trial court's order as a "carefully circumscribed inquiry," Supplemental Brief for Commonwealth at 3, and in support of the order has cited textual and decisional authority for the proposition that the attorney-client privilege does not bar

disclosure of the client's address.  Brief for Commonwealth at 6–9.  But it is immediately apparent that this is not an "address case"; the trial court's inquiry is far broader.

As we have noted in stating the facts of the case: The case *started* as an "address case."  At the first hearing, the Commonwealth's motion was "to [c]ompel defense counsel [appellant] to disclose the address and telephone number of the Defendant," N.T. 4/7/83 at 2, and the assistant district attorney stated "[t]he question is the Defendant's address....," *id.* at 17, going on to say, "We are not asking [appellant] to tell us how to find him or anything....  We are merely asking is there an address, if she knows his address and the Court deserves to have that," *id.* at 19–20.  But at the second hearing, the inquiry became far broader.  Then the trial court asked "whether [appellant] knows the whereabouts of the Defendant."  N.T. 4/13/83 at 2.  Appellant's counsel at once pointed out that this inquiry was "materially different than the question that was posed" at the first hearing.  *Id.*  As to *that* question, he said, "[appellant] does not know the address and phone number of the Defendant."  *Id.*  The trial court, nevertheless, held appellant in contempt.  Finally, at the third hearing, the inquiry became still broader.  Then the Commonwealth submitted, and the trial court issued, an order requiring appellant to

> disclose to this Court and the District Attorney's Office any information she may have regarding the whereabouts of the ... Defendant, Carlos Aquino, and any information she may have on how to locate the defendant Aquino. N.T. 6/27/83 at 19.

This order is not, as the Commonwealth characterizes it, "carefully circumscribed."  To the contrary, it is general in the extreme, leaving undefined whatever limits there may be on the questions that the Commonwealth may ask appellant.  Suppose, for example, that Aquino at some point told appellant as his attorney that A, B, and C were witnesses to the crime, or otherwise knew something that appellant should look into as relevant to his defense.  Under the trial court's order would appellant have to disclose the identity

and whereabouts of A, B, and C? It is clear that she would. For if A, B, and C knew about the crime, they may also know where Aquino is. If an attorney doesn't know where her client is, a good way to start looking for him is to ask his friends if they know where he is. Thus, appellant's knowledge regarding A, B, and C would be "information [that she had] on how to locate the defendant Aquino." Indeed, that this would be true has already been shown by the Commonwealth's own statements to the trial court. At the first hearing the assistant district attorney represented to the court that she had learned from federal authorities that in February 1983, about two months before the date set for Aquino's trial, appellant "had spoken with [one Girardo Tempkin] and she said she did not know where [Aquino] was and was trying to locate him...." N.T. 4/7/83 at 6. Other, similar, examples of information that appellant might have acquired as Aquino's attorney that would fit within the trial court's order as information "on how to locate" Aquino may readily be imagined.

In its brief as *amicus curiae*, at 19–20 n. 18, the Defender Association of Philadelphia says that by the trial court's order, appellant would be "effectively converted into an investigative arm of the prosecution". This is not an over-statement. Neither the trial court nor the Commonwealth has cited any authority upholding so sweeping an order against a plea of the attorney-client privilege. Nor should we expect to find any. For to uphold so sweeping an order would not "foster" but imperil "the confidence between an advocate and his client," the "trusting and open dialogue," that the privilege is intended to ensure. *Brennan v. Brennan, supra*. We therefore conclude that the trial court's order holding appellant in contempt must be vacated.

The Commonwealth has responded to the Defender Association's *amicus* brief by saying that it "must be noted that appellant never raised this claim in the court below or in his brief to their Court. Certainly an *amicus* brief cannot 'preserve' a point for relief that the litigant herself has never pursued." Supplemental Brief for Commonwealth at

2. This argument has no merit. As we have already noted, when the inquiry broadened from whether appellant knew Aquino's address and telephone number to whether she knew "the whereabouts of [Aquino]", appellant's counsel at once pointed out that the second inquiry was "materially different" than the first, going on to answer the first, narrow, inquiry, while refusing to answer the second, broadened, one. N.T. 4/13/83 at 2, 4–5. In addition, when arguing that the trial court had no power to grant appellant immunity, appellant's counsel said, "[S]o what you have here in the absence of some ongoing criminal case is the same kind of fishing expedition that the Supreme Court condemned in [*Commonwealth v. Polak, supra*]," N.T. 6/27/83 at 10, to which the court responded that in its opinion "the powers of granting immunity are far broader under [the Immunity Act] than they were prior thereto, *"id.* In appellant's brief to this court the first question stated, under Statement of Questions Involved, is, "Does the attorney-client privilege protect an attorney from revealing information on the whereabouts of his or her client?" Brief for Appellant at 2. And in arguing that the trial court's order violates the attorney-client privilege, appellant characterizes the order as one that "will allow fishing expeditions by prosecutors and trial courts for information that, as here, can be used as evidence against the client in the same or different criminal proceedings," *id.* at 14, adding that "[t]he problem of establishing a workable attorney-client relationship in criminal cases is difficult enough; no further problems, such as those that would be created by this kind of intrusion, should be countenanced," *id.* The record is therefore clear that, contrary to the Commonwealth, appellant has argued the issue of the trial court's order being overbroad both to the trial court and to this court. Appellant's characterization of the order is at least as critical as *amicus's;* the only difference of substance between appellant's argument and *amicus's* is that *amicus* addresses only the issue of overbreadth and not also, as appellant does, the issue of jurisdiction and selective prosecution.

(c)

█ We might conclude with what we have just said. Since the trial court's order holding appellant in contempt must be vacated, appellant's argument that she was entitled to a hearing on her claim of selective prosecution is moot; and in strict logic, it is unnecessary to assign any further reason for vacating the trial court's order beyond the reasons we have given. In the interests of complete discussion, however, we shall make some further comment. For even if the trial court's order were not overbroad, we should still be obliged to vacate it.

The attorney-client privilege is not absolute. It may be waived by the client; in some circumstances it may be that the client's death will end the privilege, or so at least McCormick argues, McCormick, *supra* at 199 ("[Disclosure] could not in any substantial degree lessen the encouragement for open disclosure which is the purpose of the privilege"); and "[s]ince the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the (privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme," McCormick, *supra* at 199. *And see Brennan v. Brennan, supra* privilege not a bar where legal advice sought to assist in crime or fraud); *Cohen v. Jenkintown Cab Co., supra* (privilege not a bar where client's rights or interest cannot be adversely affected by disclosure). Here, the Commonwealth argues that to uphold the attorney-client privilege would be a perversion of it. Citing authority that "bail-jumping" is "a continuing crime," the Commonwealth argues that Aquino's "defiance of lawful process is a continuing contempt of the court which is responsible for the case and there is an ongoing offense," Brief for Commonwealth at 6 (footnote omitted), and that "the attorney-client privilege does not protect clients for blatantly defying court orders and frustrating the orderly administration of justice," *id.* at 7 (citation omitted).

The fallacy in this argument is that it overlooks the requirement that "the *party seeking disclosure has the*

*burden of establishing a prima facie* case that the attorney was used to promote an intended or continuing fraudulent or criminal activity." *Brennan v. Brennan, supra,* 281 Pa.Superior Ct. at 372, 422 A.2d at 515 (emphasis in original), *citing Nadler v. Warner Company,* 321 Pa. 139, 143–144, 184 A. 3, 5 (1936) (when advice of counsel sought in commission of crime or fraud, communications not confidential, but before ordering disclosure court must be satisfied that proposed evidence of wrongful purpose is sufficient to go to jury), and *In re Westinghouse Electric Corporation Uranium Contracts,* 76 F.R.D. 47 (D.C.W.Pa. 1977). In this regard, perhaps the leading case is *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), where Justice CARDOZO explained the requirement of a prima facie case: "There must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in. . . . It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud. . . . To drive the privilege away, there must be something to give colour to the charge. A privilege surviving until the relation is abused and vanishing when abuse is shown to the satisfaction of the judge has been found to be a workable technique for the protection of the confidences of client and attorney." *Id.* at 14–16, 53 S.Ct. at 469–470 (citations omitted). *And see In re Special September 1978 Grand Jury,* 640 F.2d 49 (7th Cir.1980) (attorney-client privilege overcome by prima facie showing of fraud); *United States v. Calvert,* 523 F.2d 895 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976) (confidential communications from client to attorney not privileged if court concludes evidence warrants finding that communications were made for purpose of obtaining aid in commission of criminal acts.); *Pollock v. United States,* 202 F.2d 281 (5th Cir.1953, *cert. denied* 345 U.S. 993, 73 S.Ct. 1133, 97 L.Ed. 1401 (1953) (communication not privileged where made in furtherance of crime of which client was charged and evidence giving colour to charge had been introduced); *United States v. Bob,* 106 F.2d 37, 40 (2nd Cir.1939), *cert. denied* 308 U.S. 589, 60 S.Ct. 115, 84

L.Ed. 493 (1939) ("There must, of course, be first estab-lished a prima facie case; the mere assertion of an intended crime or fraud is not enough to release the attorney.") (citation omitted); *In re Selser*, 15 N.J. 393, 105 A.2d 395 (1954) (court must find that sufficient evidence, aside from communication, has been introduced to warrant finding that legal advice was sought to enable client to commit crime or tort).

Here, the Commonwealth failed to make any showing whatever, much less a prima facie case sufficient to go to a jury, that appellant "was used to promote an intended or continuing fraudulent or criminal activity." *Brennan v. Brennan, supra* 281 Pa.Super. at 372, 422 A.2d at 515. As already noted, the Commonwealth offered no testimony, the assistant district attorney making only various unsworn representations—almost all of which were hearsay state-ments of what federal authorities had said.

But if for the sake of discussion we regard the assistant district attorney's representations as admissible evidence, still the record is deficient in several key respects. It does not disclose when Aquino formed his intention to jump bail—whether before or after he moved; or whether he even communicated his intention to jump bail to appellant; or if he ever did communicate his intention to appellant, when he did, or what appellant advised him. In short, nothing suggests that appellant was in any way used to promote any criminal activity, or, indeed, that she has done anything in any sense either unethical or wrong.

At oral argument the Commonwealth emphasized appel-lant's own statement to the trial court, but we fail to see how this helps the Commonwealth. We have quoted in full both the assistant district attorney's statement of what appellant said, and appellant's own statement, above, and will only summarize them now. According to the assistant district attorney: Two weeks before the date set for trial, Aquino's "whereabouts [were] completely unknown." N.T. 4/7/83 at 8. Appellant told her "that she was ready to try the case and [Aquino] would be present and when I asked,

Where is he; do you know, she said, I can't tell you that." *Id.* According to appellant: "I did not two weeks ago tell [the assistant district attorney] that I would produce my client today or that I knew where he was. She asked me if I would tell her where he was and I told her I would not and she said, Let me ask you this, are you ready for trial? I said that as far as I am concerned I was ready since January." *Id.* at 21–22. As we have observed, the trial court made no findings either reconciling or choosing between these to some extent contradictory statements. But in any event, nothing in the record suggests that when appellant said whatever she said, she had any reason to suppose that Aquino had jumped, or intended to jump, bail, or that she had done anything to promote any such criminal activity.

The conclusion is therefore inescapable that the Commonwealth failed to meet its burden of proof. As Justice CARDOZO explained, "To drive the [attorney-client] privilege away, there must be something to give colour to the charge [that the privilege has been fraudulently used]." *Clark v. United States, supra.* Here, nothing does give colour to the charge.[3]

One further comment may be made. In *Brennan v. Brennan, supra,* we noted two exceptions to the privilege: where "the attorney was used to promote an intended or continuing fraudulent or criminal activity", and where "the interests of justice may be frustrated by the exercise of the privilege". 281 Pa.Super. at 372, 422 A.2d at 515. The question therefore arises whether the record discloses that this second exception has been met.

**3.** We note that in 2 Weinstein's Evidence, § 503(d)(1)[01] at 503–71, it is said that although "[a] number of federal cases prior to the adoption of the federal rules [of evidence in 1975] had insisted upon a prima facie showing before the privilege was withdrawn, [t]he notes to [Supreme Court] Standard 503(d)(1) [the crime-fraud exception] specifically state that a preliminary finding is not required." While this appears to be true, it is also true that Congress struck Standard 503. But even if Congress had adopted Standard 503, *Brennan v. Brennan, supra,* would continue to require Pennsylvania courts to impose the prima facie showing requirement.

We did not have occasion in *Brennan* to consider to what extent the two exceptions—fraud or crime, and interests of justice—were different. However, the single case cited with reference to the interests of justice exception was *Cohen v. Jenkintown Cab Company, supra.* In *Cohen* the issue was whether to require the disclosure of a deceased cabdriver's communications to his attorney that he was the driver of a cab that had struck Cohen, a pedestrian. It was shown that the communications were relevant to establish the cabdriver's involvement; that the action was against the cab company and not the driver or his estate; that the cabdriver was deceased and had left no estate that could be joined as a third-party defendant; and that the communications did not contain scandalous and impertinent matter that would blacken the memory of the cabdriver. In reaching our decision in *Cohen,* we cited a passage from *Hamilton v. Neel,* 7 Watts 517, 521 (1838), where our Supreme Court noted an exception to the attorney-client privilege:

> *But where it is impossible, that the rights or the interests of the client can be affected by the witness's giving evidence of what came to his knowledge by his having been counsel and acted at the time as attorney or counsel at law, the rule has no application whatever, because the reason of it does not exist.*

(emphasis added in *Cohen,* 238 Pa.Super. at 462, 357 A.2d at 692).

Based on the authority of *Hamilton,* we observed:

> Thus, in Pennsylvania the privilege does not bar testimony of an attorney which reveals the substance of a confidential communication where, in context, the client's rights or interest cannot be adversely affected thereby. *Id.*

We then held that "on balance, ... the interests of justice required the disclosure of [the] communications" in question, *id.,* going on to say:

> The [attorney-client] privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be

frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed [citations omitted]. In making this determination, however, the trial court should resolve all doubt in favor of non-disclosure, so that a client should not be chagrined to learn that the confidences that he conveyed to his attorney have been revealed to his detriment and without his consent. [footnote omitted].

*Id.*, 238 Pa.Superior Ct. at 464–65, 357 A.2d at 692–94.

It therefore appears that, whatever its exact dimensions, the interests of justice exception is very narrow, extending to such situations as those in which "the client's rights or interests cannot be adversely affected [by disclosure]." Indeed, it is evident that this must be so. Otherwise the exception would devour the rule. For the interests of justice are *always* "frustrated" by the exercise of the privilege in the sense that the prosecutor is unable to learn from the attorney what he would like to learn. As already discussed, however, a true understanding of the interests of justice carries with it an appreciation of the fact that free communication between the client and attorney must be fostered; and as we have said, in *Cohen* and again in *Brennan*, that means that any exception to the privilege must be narrowly confined, all doubts being resolved in favor of non-disclosure.

Here, the Commonwealth failed to make out a prima facie case within the interests of justice exception, for plainly, this is not a case in which "the client's rights or interests [would not] be adversely affected" by requiring appellant as his attorney to disclose the information sought by the prosecutor.

(d)

None of the authorities cited to us by the Commonwealth disturbs the foregoing conclusions—that the trial court's order directing appellant to testify was overbroad, and that the Commonwealth failed to meet its burden of proof. It may be useful, however, to discuss at least some of the

Commonwealth's citations, for while this may involve some repetition, it may make plainer what has already been said.

Some of the Commonwealth's citations are not persuasive because they do not go to the point of overbreadth. For example, the Commonwealth cites McCormick for the proposition that "[t]he weight of authority denies the [attorney-client] privilege for ... such identifying facts about [the client] as his address...." McCormick, *supra* at 185–86 (footnote omitted). But this case is not an "address case." Rather, appellant, by her counsel, stated that she did not know her client's address, and the Commonwealth neither asserts nor has it shown that she did. The order here is not that appellant disclose Aquino's address but that she disclose "any information she may have regarding the whereabouts of ... Aquino ... and any information she may have on how to locate" him. Thus, a case such as *Dike v. Dike,* 75 Wash.2d 1, 448 P.2d 490 (1968), cited by McCormick, and also by the Commonwealth, is not in point. In *Dike,* the attorney knew the client's address, and was asked to disclose only that address. Similarly, *In the Matter of Jacqueline F.,* 94 Misc.2d 96, 404 N.Y.S.2d 790 (1978), *Jafarian-Kerman v. Jafarian-Kerman,* 424 S.W.2d 333 (Mo.App. 1967), and *Falkenhainer v. Falkenhainer,* 198 Misc. 29, 97 N.Y.S.2d 467 (1950), cited by the Commonwealth, are address cases. *Jacqueline F.* and *Jafarian-Kerman,* it may be added, are discussed in *Brennan v. Brennan, supra.*

Further in regard to the issue of overbreadth, it is instructive to consider *United States v. Woodruff,* 383 F.Supp. 696 (E.D.Pa.1974), also cited by the Commonwealth. There, the defendant failed to appear for trial, and the government, with a view to seeking an indictment against him for jumping bail, requested the district court to order the defendant's attorney, a public defender, to answer questions

> relating to whether or not he advised his client as to the time and place of the trial ... [and] whether or not his client responded and acknowledged that he understood the time and place of the trial.

383 F.Supp. at 696.

Holding that this information was not privileged, the district court said:

> The communications here were not made with the purpose of securing legal advice or assistance with respect to the legal problem of the defendant. Moreover, the nature of the communications are such that the information is not incidental to or intertwined with the legal problem of the defendant. Finally, the *form of the questions* and the *nature of the communications together insure that privileged communications will not be drawn with their scope....* Such communications are non-legal in nature. Counsel is simply performing a notice function. [T]he fact that *the questions proposed are specific and discrete,* lead[s] us to conclude that the transmission of the information in that context is also outside the privilege.

*Id.* at 697–698 (emphasis added).

This decision supports not the Commonwealth but appellant. For appellant was not asked "specific and discrete" questions so limited in scope as to "insure that privileged communications [would] not be drawn within their scope." Instead, as we have discussed, she was asked questions so *un*specific and so unlimited as to insure—or at least make it very likely—that privileged conversations *would* be drawn within their scope.

By other citations the Commonwealth reveals its failure to recognize its duty to establish a *prima facie* case that to compel disclosure would be within an exception to the attorney-client privilege. Thus the Commonwealth asserts that *Brennan v. Brennan, supra,* "specifically supports the Court's contempt order." Brief for Commonwealth at 4. Quite the contrary is the case. In *Brennan* we reversed an order finding an attorney in contempt for refusing to disclose his client's address. Quoting our statement that there was no evidence that the client was in violation of any proper order, the Commonwealth argues that here it appears that appellant's client *was* in violation of a proper

order—to appear for trial. According to the Commonwealth, it follows that here appellant was properly held in contempt. But this misses one of the principal points of *Brennan*, which, as already discussed, is that the party seeking disclosure has the burden of proof. In *Brennan*, this burden was not met because the party seeking disclosure did not show that there was any fraudulent or criminal activity or any frustration of the interests of justice (this being so for a variety of reasons, one of which was that it had not been shown that the client was in disobedience of any proper order). Here, the burden has not been met because, while it may be assumed that appellant's client, Aquino, is engaged in criminal activity—having jumped bail—the Commonwealth has not shown that appellant was in any way used to promote that activity. It has only shown that Aquino did not appear for trial, and that appellant did not know his address or telephone number. So far as appears, Aquino jumped bail without telling or consulting appellant.

*Brennan*, moreover, is also relevant to the issue of overbreadth, and on that issue too it is against the Commonwealth. *Brennan* was an "address case", for the attorney knew the client's address and telephone number and was asked to disclose only that information and the name and address of the children's school (*Brennan* was a child custody case). In deciding that on the particular facts even so limited an inquiry was in violation of the attorney-client privilege, we emphasized the policy underlying the privilege, stating that "the court should *resolve all doubts in favor of non-disclosure*, so that the client should not be chagrined to learn that the confidences that he conveyed to his attorney have been revealed to his detriment and without his consent. *Cohen v. Jenkintown Cab Company, supra.*" 281 Pa.Super. at 372, 422 A.2d at 515 (emphasis in original). The Commonwealth's citation of *Brennan* overlooks this aspect of our decision.

A similar observation may be made regarding the Commonwealth's citation of *Matter of Grand Jury Subpoenas Served Upon Field*, 408 F.Supp. 1169 (S.D.N.Y.1976), and

*In re Stolar*, 397 F.Supp. 520, 521 (S.D.N.Y.1975). In *Field*, while recognizing that the client's address is not always privileged, the court held that in the circumstances, it was, and in *Stolar*, also, the court refused to require disclosure, holding that it was an abuse of process to issue a subpoena not to aid a grand jury in returning an indictment but to aid the F.B.I. in determining the whereabouts of a third party by questioning the client. The Commonwealth has argued that these cases *implicitly* hold that in circumstances other than those actually presented, the courts would have ordered disclosure. We do not find this argument helpful. The courts in fact did not order disclosure, and both opinions recognize the importance of the attorney-client privilege in fostering free communication between the client and attorney.

The Commonwealth has also cited *In the Matter of John Doe*, 117 Misc.2d 197, 456 N.Y.S.2d 312 (1982), and *Matter of Jane Doe*, 101 Misc.2d 388, 420 N.Y.S.2d 996 (1979), but we think both of these cases are best explained as involving the criminal or fraudulent purpose exception to the attorney-client privilege. In *John Doe*, the attorney refused to answer a grand jury's questions about the whereabouts of his client, while at the same time arguing that the indictment against his client should be dismissed for denial of a speedy trial. The court was of the opinion that in the circumstances, to uphold the privilege "would aid and abet the advancement of an unlawful act." 456 N.Y.S.2d at 315. Similarly, in *Jane Doe*, the court appears to have regarded the confidence as "received by [the] attorney in order to advance a criminal or fraudulent purpose." 420 N.Y.S.2d at 999.

In concluding this part of our discussion, we readily acknowledge that general language may be found in some of the cases that at first reading may appear to support the Commonwealth, and also, that some of the cases are not readily reconciled. We are satisfied, however, that our conclusion is supported both by the better-reasoned cases and by sound considerations of principle.

Reversed.

CAVANAUGH, J., concurs in the result.

MONTEMURO, J., files a concurring and dissenting opinion.

MONTEMURO, Judge, concurring and dissenting:

The majority would hold "that the information appellant was ordered to disclose was protected by the attorney-client privilege." Opinion by Spaeth, J. at 612. I concur with the majority on that particular point. However, I depart from the majority's analysis because it is my belief that the above holding does not end our inquiry. The decision of the majority merely states that the trial court engaged in an improper inquiry, without delineating the parameters of what would be a proper inquiry. Because of the importance of the issue, its substantial effect on the administration of criminal justice in this Commonwealth, and because of the court's responsibility to provide guidance to the trial courts and the criminal bar, I believe we should set forth the scope of a trial court's authority to inquire of an attorney the whereabouts of his or her client, when that client fails to appear for trial. A concurrent exposition of the procedural context in which such an inquiry is permitted is also warranted.

Accordingly, I feel compelled to state my own views; especially because of the frequency with which this situation arises. Trial judges, who daily labor in the criminal court room, and appellate court judges, who have reviewed the records of numerous criminal trials, would not dispute that the following scenario takes place as an almost daily occurrence in the criminal court rooms of our Commonwealth:

ASSISTANT D.A.: Your Honor, this is the case of Commonwealth v. John Doe, which appears as number one on your list today. The defendant received personal service to be here today but the Commonwealth has been advised by defense counsel, Mr. Roe, that he is not here.

**THE COURT:** Mr. Roe, you have entered an appearance in this case?

**MR. ROE:** Yes, Your Honor.

**THE COURT:** Do you have any idea of the whereabouts of your client?

**MR. ROE:** Your Honor, I spoke with him on the telephone just last week and I had every reason to believe that he would be here today. I have no idea where he is, but, if Your Honor will grant me a continuance of one week, I will try to locate him and report back to the court.

**THE COURT:** Granted.

This hypothetical situation, though not always as set forth above, is prevalent in every trial court in the Commonwealth. To suggest that a trial court is prohibited from asking the whereabouts of the defendant is absurd. If this court were to embrace such an absurdity, it is my view that we would, albeit unwittingly, do violence to the efficient administration of an already burdened criminal justice system. It is obvious that standards are necessary to protect privileged information; but it is just as obvious that the privilege is not absolute. A balance must be struck; one which furthers both the purpose of the attorney-client privilege and the purpose of the administration of justice.

To this end, I would hold that the lower court had jurisdiction to compel the appellant's testimony. I would hold also that a trial court may inquire into an attorney's personal knowledge of the appellant's whereabouts, and that such information is not privileged. Finally, with respect to the instant appeal, I would modify the order of the lower court narrowing the scope of the court's inquiry and remand the case for further proceedings. For the purpose of clarity, my analysis, wherever possible, will parallel that utilized by Judge Spaeth.

## I. JURISDICTION

The appellant does indeed argue that since no proceeding was pending before the trial court, the court lacked jurisdic-

tion to compel her testimony. Essentially, she contends that the criminal action against her client, Aquino, on the charge of raping a nine-year old child, was not a proceeding because trial had not commenced. She further contends that the failure of the district attorney to bring charges against Aquino for default in required appearance precludes that charge from serving as a basis for jurisdiction. In support of her position she cites *Commonwealth v. Polak,* 438 Pa. 67, 263 A.2d 354 (1970), and *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979). Both cases stand for the proposition that a subpoena *duces tecum* issued prior to the institution of criminal proceedings (the filing of a complaint) is invalid.

The lower court found that both cases were inapposite, and held that its jurisdiction to compel appellant's testimony was proper based on the provisions of the Immunity Act, 42 Pa.C.S.A. § 5947, as applied to the rape charge pending against Aquino.

I agree and would hold that the trial court properly exercised its jurisdiction. Both *Commonwealth v. Polak, supra,* and *Commonwealth v. DeJohn, supra,* address the situation in which investigatory or prosecutorial officers subpoena information or documents prior to the commencement of a criminal action. Such action was clearly violative of the statutory grant of authority. 17 P.S. § 251.[1] The present case is readily distinguishable on several grounds.

Here, a criminal complaint charging Aquino with the rape of a nine-year old child had been filed. Bail was set, and upon payment, Aquino was released. In posting bail, Aquino subjected himself to the conditions of bail, which included the requirement that he notify the court of any change

1. § 251. Jurisdiction stated

   The courts of common pleas shall have jurisdiction and power within their respective counties to hear and determine all pleas, actions and suits, and causes, civil, personal, real and mixed, according to the Constitution and laws of this commonwealth; and the said courts shall have power to grant, under their judicial seals, all lawful writs and process necessary for the exercise of such jurisdiction.

of address. Pa.R.Crim.P. 4013(c). Aquino also signed a subpoena agreeing to appear in court at the designated place and on the designated date. He failed to appear and he failed to notify the court of his change in address, putting himself in violation of the court's lawful process and the conditions of bail prescribed by the criminal rules.

However, his attorney showed up; as did the district attorney, the nine-year old prosecutrix, her five-year old brother (a witness), and the trial judge. Each, for his own part, ready to proceed with trial. The jurisdiction of the court had been invoked, and no one disputes the validity of that jurisdiction. Yet, without the defendant, the matter could not proceed—Justice was stymied. Obviously, the court had the responsibility to attempt to ascertain the whereabouts of Aquino in order that the prosecution could proceed. Common sense dictates that defense counsel is the logical target of the court's inquiry. It is in this context that we must determine the question of jurisdiction.

The legislature has provided the judiciary with the means to compel testimony from witnesses who raise their constitutional privilege against self-incrimination [2] by statutorily authorizing the grant of immunity from prosecution based on any information given by the witness. In 42 Pa.C.S.A. § 5947, it states:

(a) *General Rule.*—Immunity orders shall be available under this section in all proceedings before:

(1) Courts.

(2) Grand Juries.

(3) Investigating grand juries.

(4) The minor judiciary and coroners.

\*　　\*　　\*　　\*　　\*　　\*

(c) *Order to Testify.*—Whenever a witness refuses on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding specified in subsection (a), and the person presiding at such proceeding communicates to the witness an immunity order, that

2. U.S. Constitution, Amend. V, XIV.

witness may not refuse to testify based upon his privilege against self-incrimination.

A refusal to testify after the grant of immunity may be punished by either civil contempt, 42 Pa.C.S.A. § 5947(e), or criminal contempt, 42 Pa.C.S.A. § 5947(f).

It must be determined whether the trial court could properly compel the testimony of the appellant under the Immunity Act. There are two aspects to this determination: (1) was the pending rape charge against Aquino a "proceeding" as contemplated by § 5947(a) and (2) can information not strictly relating to the guilt or innocence of the defendant be compelled? As I construe the Immunity Act, the answer to both questions is yes.

In construing a statute, we must attempt to ascertain the legislative intent. 1 Pa.C.S.A. § 1921(a). However, "When the words of a statute are clear and free from doubt, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). In construing "proceeding", this court once said in *Commonwealth v. Dean*, 172 Pa.Super. 415, 417, 94 A.2d 59, 60 (1953): "Without question, the word 'proceeding', standing alone, is broad enough to cover each step or all steps in a criminal action from commencement to final determination." The court found that legislative intent was paramount in deciding the meaning of the word in context.

In ascertaining the legislative intent, I am also mindful of the decision of the Pennsylvania Supreme Court in *Commonwealth v. Brady*, 470 Pa. 420, 368 A.2d 699 (1977), wherein the court construed 19 P.S. § 640.1 *et seq.*, the predecessor to the present Immunity Act. The court said:

"[T]he delicate balance created by the privilege requires that the Act be construed according to its express terms, and that its applicability be limited to only those proceedings clearly within the purview of the language employed by the legislature."

*Id.* 470 Pa. at 426, 368 A.2d at 702. In *Brady*, the court construed the act as being inapplicable to indicting, as opposed to investigating, grand juries. The legislature

subsequently vitiated this construction by specifically including both in the present act, 42 Pa.C.S.A. § 5947(a)(2).

Even if a strict construction is applied, the Immunity Act is applicable to criminal prosecutions before a trial court, whether trial has commenced or not. The clear, express and unambiguous language of the Act states that, "[i]mmunity orders shall be available in *all* proceedings before: (1) Courts." 42 Pa.C.S.A. § 5947(a) (emphasis added). This language was meant to encompass every aspect of the case subsequent to the filing of the criminal complaint and prior to the verdict. If the legislature had meant to limit the Act's applicability to the trial only, it could have easily done so by stating just that.

The second determination—whether the Act can be used to compel information not strictly related to the guilt or innocence of the accused—is addressed in the majority opinion:

> It seems clear that if the claim were that appellant had information relevant to whether Aquino had committed the rape, the trial court would have had jurisdiction to grant her immunity so that the Commonwealth might call her as a witness against Aquino. But is not so clear that the Immunity Act was intended to extend to a situation where the information sought is irrelevant to whether the rape was committed.

Opinion of Spaeth, J. at 326.

I construe the Immunity Act to provide for the availability of immunity orders to compel information beyond that relevant to the guilt or innocence of the criminal defendant. The legislature has specifically provided that an immunity order may be issued, "[W]henever a witness ... refuses to testify or *provide other information.*" 42 Pa.C.S.A. § 5947(c) (emphasis added). I believe this language shows the intent of the legislature to extend the scope of the Act to information necessary to a just and expeditious resolution of the proceedings.[3] In *Commonwealth v. Polak,*

3. Additionally, I would like to point out one other aspect of the majority opinion with which I disagree. While the trial court would

*supra* 438 Pa. at 69, 263 A.2d at 355, the Supreme Court said, "[t]he essence of a subpoena's function is to aid the court in the resolution of litigation." The court's power to compel testimony through the grant of immunity has an almost identical function. I would therefore hold that the court below had jurisdiction to compel the appellant, despite her claim of Fifth Amendment privilege, to divulge the whereabouts of her client.

Finally, I wish to make clear that the trial court's power to compel such information is not limited to situations where a Fifth Amendment privilege is interposed and the provisions of the Immunity Act become applicable. I would hold that in the absence of a Fifth Amendment claim of privilege—i.e., relying solely on a claim of attorney-client privilege—the court's inherent authority to enforce its orders and decrees enables it to inquire into the whereabouts of the appellant's client. A further explanation of this position is set forth, *infra*.

In sum, I would hold that the trial court has proper jurisdiction and authority to compel an attorney to reveal the whereabouts of his or her client under the Immunity Act or its contempt powers.

## II. ATTORNEY–CLIENT PRIVILEGE

If it is assumed, *arguendo*, that the ultimate goal of our system of justice is the ascertainment of the truth—that is, the correct resolution of controversies,—based on all of the facts relevant to that controversy, then it is paradoxical that at times we exclude relevant facts; albeit for very important reasons based on various policy considerations. In this regard, the attorney-client privilege is, perhaps, the

have jurisdiction to compel appellant to reveal information regarding Aquino's guilt or innocence on the rape charge, this information would be absolutely privileged under both 42 Pa.C.S.A. § 5916, and the Code of Professional Responsibility, Canon 4, EC 4–1, and DR 4–101. The Immunity Act, while removing the possibility of criminal prosecutions based on compelled information, does not protect against proceedings before the Disciplinary Review Board for violations of the Code of Professional Responsibility.

most necessary and the most universally accepted paradox in our system of justice.

It is generally accepted that the attorney-client privilege is important to foster full communication between attorney and client, *Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 434 A.2d 740 (1981); *Brennan v. Brennan*, 281 Pa.Super. 362, 422 A.2d 510 (1980), and yet, it is recognized that assertion of the privilege will in some cases serve to shield relevant facts and thereby distort the truth seeking process. Nonetheless, because its salutary effect on everyone under the justice umbrella is believed to outweigh any short-term detriment which its use may engender, the privilege has been championed by bench, bar and academia alike.

Such is the collective wisdom of our jurisprudential experience; a balancing of the policy underlying the privilege against the recognition that a correct result is best reached when all the facts relevant to a controversy are presented. This is a delicate balance, and it is at issue in the present case.

To be sure, the information for which the privilege is asserted herein does not relate to guilt or innocence. Its revelation will not tip the scales of justice. The information at issue here, however, is more vital to the administration of justice since without it, there may never be a chance to find the truth.

Specifically, at issue here is whether the attorney-client privilege protects the attorney's knowledge of the whereabouts of a client who fails to appear for trial. Authority on this particular issue is scanty. However, reference to 8 WIGMORE ON EVIDENCE § 2298 (3rd Ed.1940) reveals a case with similar facts:

> 1872, *McMaster's Trial*, 9th Amer.St.Tr. 861: "On the last day of trial of Edward T. Avery—a Monday morning—just as the prisoner's counsel, Mr. McMaster, was beginning his closing address to the jury, the Prosecuting Attorney interrupted him with the question, 'I don't notice the prisoner in court, where is he?' to which the attorney replied, 'That is for you to find out.' The

Presiding Judge Bond, then asked, 'Where is your client, Mr. McMaster?' 'I understood,' said Mr. McMaster, 'when we adjourned on Saturday night that Dr. Avery had gone to see his family and that he would return to-day.' Then the Court asked his other counsel, Mr. Wilson, if he expected him back. 'I expected him to return by the next train. I know nothing save for the information I have received from Mr. McMaster.' The attorney, McMaster, asked to be excused from answering these questions, whereupon the Court ordered him to show cause on a future day why he should not be disbarred for contempt. The trial went on and the prisoner was convicted in his absence. Several days later the question of the contempt was argued before the Judges who sat on the Avery trial. Mr. *Fickling*, for the respondent: ... 'Mr. McMaster was not bound to be an informer; he was in no wise the custodian of the person of Dr. Avery, and in no way responsible for his safe-keeping. He was not morally or professionally bound to declare where he was, even if he knew; indeed, it would have been a violation of his professional confidence if, knowing he had confessed.' Mr. *Chamberlin*, for the State: ... 'Is Mr. McMaster defending Dr. Avery, in any just sense of the term, when he connives, conspires or communicates with him in reference to his escape from the jurisdiction and authority of this Court?' ... It is true that the privilege of client to attorney is very broad, but it does not cover everything, and it does not conflict with that great duty which the attorney from the nature of his office, under his oath, holds to a Court of justice.... This, therefore, could not have been a privileged communication. It could not have been advice or assistance given by Mr. McMaster to his client, because it was, upon the face of it, a palpable and direct attempt, not to act as an officer of this Court, but to act in defiance of this Court, and for the express purpose of enabling his client not to stand his defense and meet his verdict, but to escape beyond the reach of justice.... The just rights of Dr. Avery were in the keeping and protection of Mr.

McMaster, but nothing more. His rights here were to a fair trial, to a full examination of all his evidence, and the opportunity to present every circumstance and every particle of evidence that might be presented in his behalf; but it extended no further. He was bound to protect the just rights of his client, but he was not bound—he was forbidden, by honorable professional conduct—to attempt to evade the operations of the law, or to defeat the administration of justice.' ... Judge Bond took the matter 'under advisement,' and so kept it to the day of his death."

After undertaking the writing of this opinion, I have had occasion to reflect upon my own folly and upon Judge Bond's wisdom. I have become convinced that a "correct" resolution of the matter before us is a phantasm because any result will of necessity be a manifestation of where the court strikes a balance. And yet, this court has been called upon to weigh the interests involved and to set the balance between privilege and disclosure. To follow the footsteps of Judge Bond would be utter folly, for this would take us upon a trail leading to nowhere; instead, we shall attempt to create a trial of our own—one that reaches a definable destination which others may follow.

I do not take issue with the learned exposition of the law of attorney-client privilege set forth in the majority opinion. Insofar as this discussion pertains to the specific holding of this case, I am in total agreement. Without question, this court will not sanction any fishing expeditions by the Commonwealth into facts in the possession of defense counsel which may or may not be within the attorney-client privilege. The trial court's order of June 27, 1983, directed the appellant to:

disclose to the Court and the District Attorney's Office any information she may have regarding the whereabouts of the above defendant, Carlos Aquino, and any information she may have on how to locate the Defendant Aquino.

(N.T. June 27, 1983, at 19). Such an order is clearly overbroad and sanctions the prosecution's access to information and material which is absolutely privileged. Accepting this proposition as indisputable, I, nevertheless, disagree with the majority's disposition of this case.

This court, by virtue of the statutory authority granted by 42 Pa.C.S.A. § 706, "may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings as may be just under the circumstances." I would apply this authority to the present case and modify the order of the trial court to require the appellant to reveal, if known, her knowledge of the present whereabouts of Aquino, and if his present whereabouts are unknown, then his last known whereabouts, within her personal knowledge. I believe that the trial court has the power to issue an order compelling the divulgence of such information and that the information which the order addresses is not privileged. This being so, the information sought is not subject to any evidentiary disability.

The appellant, assuming she is stripped of her claimed privilege against self-incrimination by the grant of immunity, must base her refusal to testify on the attorney-client privilege. Discussion has centered around the two bases for assertion of the privilege; statutory, as evidenced by 42 Pa.C.S.A. § 5916, and ethical, as evidenced by the Code of Professional Responsibility, Canon 4, EC 4–1, DR 4–101. I believe that a carefully circumscribed order, such as the one I propose, would not require the disclosure of any privileged information. However, we will examine both the statute and the Code of Professional Responsibility to find if this is so.

The statutory provision states:

In a criminal proceeding counsel shall not be competent to testify to confidential communication made to him by his client, nor shall the client be compelled to disclose the

same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5916, *See also* 42 Pa.C.S.A. § 5928 (attorney-client privilege in civil proceedings). The privilege is not absolute. It applies only to "confidential communications." I would hold that the whereabouts of a client-defendant, who is free on bail in a pending criminal proceeding, could never be a confidential communication.

There is no dispute that the record discloses that Aquino was free on bail pending trial. In being admitted to bail, Aquino subjected himself to the conditions of bail as set forth in Pa.R.Crim.P. 4013:

Rule 4013. Conditions of Bail

When a person is admitted to bail, the conditions of the bail bond shall be that such person will:

(a) appear before the issuing authority or court at all times required until full and final disposition of the case;

(b) submit to all orders and process of the issuing authority or court;

(c) give written notice to the issuing authority, the clerk of courts, the district attorney, and court bail agency or other designated court bail officer, of any change of address within forty-eight (48) hours of the date of such change;

(d) comply with any specific requirement of release which may be reasonably imposed by the issuing authority or court to assure compliance with the conditions of bail, such as satisfactory participation in a designated program;

(e) obey such other conditions as the issuing authority or court may impose, or any reasonable conditions as the court bail agency or other designated court bail officer may impose with leave of court.

Subsection (a), (b) and (c) are each applicable herein. Aquino had agreed as conditions to this release to appear at all noticed proceedings before the court; to submit to all orders and process of the court; and to give notice of "any change of address within forty-eight (48) hours of the date

of such change." He has breached each and every one of these obligations.

Aquino obligated himself to keep the court informed of his whereabouts. The obligation is absolute in its application to Aquino. I would submit that Aquino has no right to refuse to disclose his whereabouts to the court. As such, the information cannot be deemed confidential as between Aquino and the court. The question is whether the appellant can raise the bar of confidentiality where the client cannot.

First, the Code of Professional Responsibility, EC7–27, imposes on an attorney a duty, to wit: "Because it interferes with the proper administration of justice, a lawyer should not suppress evidence that he or his client has a legal obligation to reveal or produce." The Ethical Consideration imposes a duty, based on a strong public policy, on the attorney not to suppress "evidence". The term "evidence" must be construed in a manner consistent with the stated purpose; i.e. to further the administration of justice. As such I would conclude that the term "evidence" contemplates information necessary to further the administration of justice—in this case, the whereabouts of Aquino. I realize this conclusion is somewhat result oriented; however, in the absence of controlling authority, this must sometimes be so. Thus, because Aquino had a duty to apprise the court of his whereabouts, I would conclude that this duty devolves upon his attorney. The statutory privilege is to no avail because the communication is not confidential.

Second, another provision of the Code of Professional Responsibility, DR 7–102(B)(1), provides:

(B) A lawyer who receives information clearly establishing that:

(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, except

when the information is protected as a privileged communication.

A criminal defendant, in my opinion, is certainly committing a fraud upon the court by representing that, if admitted to bail, he will comply with all of the conditions of that bail, and then, following his release on bail, he subsequently fails to appear for trial. Thus, I would conclude that this provision also supports a finding that an attorney's knowledge of his client's whereabouts is not privileged. The exception to this provision—"a privileged communication"—is not applicable. Again, I refer back to the *absolute obligation* of a criminal defendant released on bail to inform the court of his whereabouts. This information cannot be a "confidential communication" under statutory law; nor (as will be discussed, *infra*) do I believe the Code of Professional Responsibility is a basis for finding the privilege to exist.

The argument for non-privilege is buttressed by the fact that Aquino had subjected himself to the process of the court by accepting service, on January 19, 1983, of a subpoena to appear for trial on April 7, 1983. It is unquestioned that the courts of this Commonwealth have the power to issue writs and process necessary for the exercise of jurisdiction, or for the enforcement of any order. 42 Pa.C.S.A. § 323. Moreover, the disobedience of the lawful process of the court is punishable by contempt. 42 Pa.C. S.A. § 4131. Aquino, being in disobedience of the lawful process of the court, was subject to punishment for contempt. *Id.* § 4131(2). Aquino, by reason of his failure to appear, was also subject to an additional criminal charge of default in required appearance. 18 Pa.C.S.A. § 5124. The appellant's contention that the court was limited to those remedies in the Rules of Criminal Procedure (suing out the bail and issuing a bench warrant, Pa.R.C.P. 4016) is simply unsupportable.

The appellant asks this court to rule that—where, as here, a criminal defendant's failure to appear places him in violation of the Pennsylvania Rules of Criminal Procedure; subjects him to punishment for contempt for violation of the

court's lawful process; subjects him to criminal prosecution; and effectively halts the administration of justice—his location is a confidential communication. I find such a request to be utterly ridiculous. On the contrary, I would hold that because, of the joint obligation of both attorney and criminal defendant to apprise the court of the location of said defendant, that that information is not a confidential communication and is therefore not subject to the evidentiary disability of the statutory privilege. The appellant can, therefore, be compelled to disclose knowledge of the whereabouts of Aquino. 42 Pa.C.S.A. § 4131(2)(3).

Finally, with regard to the statutory privilege, it is necessary to distinguish the case of *Brennan v. Brennan, supra,* in which this court interpreted 42 Pa.C.S.A. § 5928, the civil action equivalent to § 5916. Stripped of all verbiage, the *Brennan* case held:

> ... we find that attorney Breault's reliance upon the attorney client privilege was appropriate in this case. He asserted that when his client furnished his address, he asked Attorney Breault to keep the information confidential. In these circumstances, the prevailing rule would hold such information to be privileged, unless the exercise of the privilege either operates to permit or continue a crime or fraud or is clearly shown to be frustrating the administration of justice.

*Id.* 281 Pa.Super. at 376, 422 A.2d at 517. *Brennan* is distinguishable on several grounds. First, there has been no representation herein that Aquino requested the appellant to keep the information confidential. Therefore, we can surmise that the information would not be within the purview of the holding of *Brennan,* because of the emphasis that was placed on this factor. However, this is a relatively minor point. More importantly, the exercise of the privilege in the present case operates to continue both a crime and a fraud, and additionally, it indisputably frustrates the administration of justice.

I believe it is self-evident that the exercise of the privilege operates to continue Aquino's crime (default in required

appearance) and a fraud (defiance of conditions of bail). More important, however, is the effect that the defendant's failure to appear has on the administration of justice. Without Aquino's presence, the trial cannot commence and the determination of guilt or innocence on the rape charge cannot proceed. This is truly frustration of the administration of justice.

I would also conclude that the majority's construction of the term "interests of justice," Opinion of Spaeth, J. at 338–339, is artificially narrow. Citing *Cohen v. Jenkintown Cab Company*, 238 Pa.Super. 456, 357 A.2d 689 (1976), and *Hamilton v. Neel*, 7 Watts 517, 521 (1938), the majority states that only when "the client's rights or interests cannot be adversely affected [by disclosure]," Opinion of Spaeth, J. at 339, can the interests of justice exception be raised. I believe this to be a misinterpretation of prior precedent. I will concede that *Cohen* and *Hamilton* support the proposition that the privilege may be overborne when the client is not a party to the action in which the attorney's testimony is sought and where the client's rights and interests will not be affected. However, even in cases where the client's rights and interests are likely to be affected, those rights and interests and the policies underlying the privilege must be balanced against the interests of the administration of justice. In the present case, we must consider the exceedingly vital public interest in bringing criminal defendants to trial. The majority justifies its construction by stating that, "[o]therwise the exception would devour the rule." Opinion of Spaeth, J. at 339. This need not be so. The courts must be ever vigilant to unjustified attempts to breach the attorney-client privilege, yet in a case such as this where justice is so obviously frustrated, we must not be blind to the strong public policy which mandates that criminal defendants be brought to trial. As Judge Hoffman stated in his concurring opinion in *Brennan v. Brennan, supra*, 281 Pa.Super. at 379, 422 A.2d at 518:

> *Nevertheless courts must balance the interests of the client against the potential harm to others.* This is

particularly so in a child custody case where the child's best interests are of paramount importance. *Consequently, if the party seeking to overcome the privilege establishes that the child's interests require disclosure of the information which the client asserts is privileged, the privilege must yield.* (emphasis added)

I suggest that the "potential harm to others" is even greater in cases where criminal defendants are allowed to flaunt their disregard of the criminal justice system and remain free on the streets, possibly to commit more crimes upon innocent victims. It seems almost trite to repeat that victims of crime, more and more see themselves victimized as much by the criminal justice system as by the malevolent perpetrators.

The majority also stresses the requirement set down in *Brennan*, that the party seeking to overcome the privilege establish a *"prima facie* case that the party asserting the privilege is committing a crime or fraud or continuing the same in exercising the privilege, or that the interest of justice is frustrated by the exercise of the privilege." *Id.* 281 Pa.Super. at 376, 422 A.2d at 517. In my opinion, this is no major obstacle. The trial judge cannot be asked to ignore what is evident to him; i.e., that the defendant released on bail is not present in court. This alone establishes that the interest of justice is threatened. If the court then asks, as did Judge Anderson, if defense counsel knows the whereabouts of the defendant, and receives an answer in the affirmative, then there is no question that the interests of justice would be facilitated by counsel disclosing this knowledge, and consequently, the interests of justice would be frustrated by her refusal to do so.

Thus, I would conclude that the *prima facie* case required by *Brennan* is satisfied by a determination that the defendant was required to appear in court at the time and place of the trial; that the defendant was on notice of the appearance; that the defendant is not, in fact, present; and that the defendant's attorney knows the whereabouts of the defendant. This final requirement can be met by a simple

inquiry to counsel. If counsel replies affirmatively, then disclosure of his or her knowledge of the defendant's whereabouts is a proper matter of inquiry for the court. If counsel replies negatively, the issue is moot.

The second basis for appellant's claim of privilege—The Code of Professional Responsibility—would not prevent the disclosure of the whereabouts of a client who failed to appear for trial in violation of the court's lawful process. The Code states in EC 4–2:

> EC 4–2. The obligation to protect confidences and secrets obviously does not preclude a lawyer from revealing information when his client consents after full disclosure, when necessary to perform his professional employment, when permitted by a Disciplinary Rule, or when required by law.

And further states in DR 4–101(C):

> (C) A lawyer may reveal:
>
> (1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.
>
> (2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.
>
> (3) The intention of his client to commit a crime and the information necessary to prevent the crime.
>
> (4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

I would submit that DR 4–101(c)(2) is specifically applicable in this case in that the Disciplinary Rules (DR 7–102(A)(3) and (B)(1)), the relevant law (Pa.R.Crim.P. 4014), and court order (as modified), would require the disclosure of Aquino's whereabouts.

My position is supported by the ABA Committee on Professional Ethics, which has stated:

> It is the duty of an attorney to maintain the confidence and preserve inviolate the secrets of his client, and it is the general rule that when a client gives his address to

his attorney while consulting him in a professional capacity on a business matter for the purpose of enabling the attorney to communicate with him in respect thereto, it is a privileged communication. However, there are some circumstances under which such a communication is *not privileged* for reasons founded on sound public policy. In such cases the attorney may not remain silent.

When the communication by the client to his attorney is in respect to the future commission of an unlawful act or to a continuing wrong, the communication is not privileged. One who is actually engaged in committing a wrong can have no privileged witnesses, and public policy forbids that an attorney should assist in the commission thereof, or permit the relation of attorney and client to conceal the wrongdoing.

A defendant in a criminal case when admitted to bail is not only regarded as in the custody of his bail, but he is also in the custody of the law, and *admission to bail does not deprive the court of its inherent power to deal with the person of the prisoner.* Being in lawful custody, the defendant is guilty of an escape when he gains his liberty before he is delivered in due process of law, and is guilty of a separate offense for which he may be punished. *In failing to disclose his client's whereabouts as a fugitive under these circumstances the attorney would not only be aiding his client to escape trial on the charge for which he was indicted, but would likewise be aiding him in evading prosecution for the additional offense of escape.*

*In the opinion of the committee that under such circumstances the attorney's knowledge of his client's whereabouts is not privileged,* and that he may be disciplined for failing to disclose that information to the proper authorities. Equally, the attorney may be disciplined if, upon his client's refusal to surrender upon his advice, he continues to act as his attorney. If the fugitive persists in so evading a trial upon the charges against him, the attorney should terminate their relations.

Failing in this, the attorney is guilty of a violation of his oath and of his duty to society.

ABA Formal Opinion No. 155 (1936) (emphasis added). *See also* ABA Formal Opinion No. 156.

In sum, I would hold that the trial court properly exercised its jurisdiction to compel appellant to reveal the whereabouts of her client, but that the order, as framed, was overbroad and would lead to the disclosure of information which is absolutely protected by the attorney-client privilege. I would therefore modify the order of the trial court to inquire into the appellant's personal knowledge of the present or last known whereabouts of the defendant, Aquino, and remand this case for proceedings consistent with that order. Insofar as my views conflict with those of the majority, I must respectfully dissent.